**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JESUS FERNANDEZ MEDINA,<br><br>Petitioner,<br><br>v.<br><br>SCARLET GRANT, et al.,<br><br>Respondents. | ) | Case No. CIV-26-00792-JD |

**ORDER**

Petitioner Jesus Fernandez Medina ("Petitioner") brings a pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"). [Doc. No. 1]. Respondents filed a Response in Opposition to the Petition [Doc. No. 9], to which Petitioner replied [Doc. No. 10].[1] For the reasons that follow, the Court DENIES the Petition.

## I. BACKGROUND

Petitioner is a citizen and national of Venezuela. [Doc. No. 9-1]. On October 28, 2024, he applied for admission at the port of entry in Laredo, Texas, where the Department of Homeland Security charged him as an arriving inadmissible alien and placed him in removal proceedings under 8 U.S.C. § 1229a. [Doc. No. 9-1]. DHS paroled him into the United States through April 24, 2026. [Doc. No. 9-3]. He filed an application for asylum and withholding of removal [Doc. No. 9-2], and an immigration judge found him removable on July 31, 2025 [Doc. No. 9-4]. On March 19, 2026, Immigration and

[1] Citations to the parties' filings use ECF designations from the top of district court filings for both page numbers and exhibit numbers.

Customs Enforcement ("ICE") took Petitioner into custody following a traffic stop in Weatherford, Oklahoma. [Doc. No. 9-5 at 1–2]. He remains detained at the Cimarron Correctional Facility in Cushing, Oklahoma. [Doc. No. 9-5]; [Doc. No. 1 at 1]; *see also* ICE Online Detainee Locator System, https://locator.ice.gov/odls/#/search (last accessed June 2, 2026); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice . . . ."). A final hearing in his removal proceedings is set for June 9, 2026. [Doc. No. 9-8].

## II. LEGAL STANDARDS

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483 (2004); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

Courts employ a liberal construction to the legal sufficiency of pro se pleadings, "applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Even so, the court will not "assume the role of advocate," *id.*, nor will it "supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74.

## III. ANALYSIS

Petitioner raises four grounds for habeas relief: (1) arrest and detention without a warrant or probable cause; (2) arrest and detention after his purported admission to the United States and without an individualized assessment of the revocation of his parole; (3) detention without a custody redetermination; and (4) detention without any material change in circumstances bearing on his flight risk or dangerousness since his release on parole. [Doc. No. 1 at 6–7]. Liberally construed, these grounds invoke the Fourth Amendment, the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act ("APA"). However, none warrants habeas relief.

### A. Petitioner is properly detained as an arriving alien subject to removal under section 1225(b).

Grounds two through four share a single implied premise—that Petitioner was admitted to the United States when he was paroled, and that his detention is therefore governed by 8 U.S.C. § 1226(a)—but that premise is mistaken. Petitioner is an arriving alien. The Notice to Appear classifies him as such and charges that he "applied for admission to enter the United States at the Port of Entry in Laredo, Texas, on October 28, 2024," as an immigrant lacking valid entry documents. [Doc. No. 9-1 at 1]. Petitioner's subsequent release necessarily means DHS paroled him under 8 U.S.C. § 1182(d)(5) because no other provision permits release of an arriving alien detained under § 1225(b). *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("That express exception to detention

implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released."); *see* [Doc. No. 9-3] (Form I-94 reflecting parole). And parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A); *see also id.* § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted.").

Because Petitioner was paroled rather than admitted, he is subject to the entry fiction. "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). An alien in Petitioner's position thus "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140. The due process claim accordingly collapses into a statutory one.

The Petition does not identify any specific provision of the Immigration and Nationality Act under which he is held. The record Respondents have submitted, however, establishes that Petitioner is an arriving alien subject to expedited removal under 8 U.S.C. § 1225(b)(1)—a basis for detention that does not require a bond hearing. Petitioner applied for admission at the Laredo port of entry on October 28, 2024, which is less than two years before his redetention. [Doc. No. 9-1 at 1]. Section 1225(b)(1) governs the expedited removal of such aliens and mandates their detention:

> Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Because Petitioner is an arriving alien who was paroled rather than admitted, and whose parole has since been terminated, his detention pending removal is mandatory. That the Executive has afforded Petitioner additional process under § 1229a does not alter the statutory authority for his detention. *See, e.g.*, *Matter of M-S-*, 27 I. & N. Dec. 509, 515 (2019) ("The question presented is whether aliens who are originally placed in expedited proceedings and then transferred to full proceedings . . . become eligible for bond upon transfer. I conclude that such aliens remain ineligible . . . .").[2]

Petitioner argues that his detention is instead governed by § 1226(a)—which affords a bond hearing—because he has resided in the country for nearly two years and is not "seeking admission." [Doc. No. 10 at 4–5].[3] He relies on decisions addressing

---

[2] Respondents do not invoke a specific § 1225(b) detention provision. Regardless, even construing Petitioner as detained under § 1225(b)(2)(A)—as an inference based on that provision's prescription of § 1229a removal—would not change the outcome here. Under that construction, even assuming material disjunction between § 1225(b)(2)(A)'s use of "applicant for admission" and "seeking admission," the question of whether an arriving alien is seeking admission gets preempted by the entry fiction. The country's appellate courts are in conflict as to whether *present unadmitted* aliens must subjectively "seek admission" in order to be subject to mandatory detention under § 1225(b)(2)(A), and none of those cases suggest that this question also applies to *arriving* aliens who have never affected an entry. *Compare Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *and Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (holding present unadmitted applicants for admission seek admission), *with Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *Lopez-Campos v. Raycraft*, Nos. 25-1965/1969/1978/1982, 2026 WL 1283891 (6th Cir. May 11, 2026), *and Hernandez Alvarez v. Warden*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026) (finding material disjunction between the same conditions). *See also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250 (7th Cir. May 5, 2026).

[3] Petitioner incorrectly states that "Respondent[s] argue" his detention "is governed by . . . § 1225(b)(2)(A)." [Doc. No. 10 at 4]. Respondents make no such

whether aliens who entered without inspection and have long resided in the interior remain "applicants for admission" under § 1225(b)(2). [Doc. No. 10 at 3–5]. Those decisions do not reach his situation. Petitioner did not enter without inspection; he arrived at a port of entry, applied for admission, and DHS paroled him. [Doc. No. 9-1]. The entry fiction governs precisely that circumstance—"aliens who arrive at ports of entry—even those paroled elsewhere in the country for years." *Thuraissigiam*, 591 U.S. at 139. Section 1226(a) therefore does not apply to Petitioner.

Nor was Petitioner entitled to an individualized assessment before his parole was revoked. Parole under § 1182(d)(5) may be "terminated upon written notice to the alien," after which "he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). DHS provided that written notice. [Doc. No. 9-7]. Returned to the status of an applicant for admission, Petitioner's case "continue[s] to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Grounds two, three, and four therefore fail at their premise: Petitioner was not admitted and is detained as an arriving alien subject to removal under § 1225(b).

**B. Petitioner does not state a due process claim.**

To the extent grounds three and four assert an independent due process right to a custody redetermination, or to release absent a renewed finding of flight risk or dangerousness, the claims fail. Because Petitioner is subject to the entry fiction, he "has

---

contention. *See generally* [Doc. No. 9] (containing no assertion as to which detention provision governs Petitioner's detention).

only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Congress has not provided a bond hearing for aliens detained under § 1225(b), and such aliens may be released only on parole under § 1182(d)(5). *Jennings*, 583 U.S. at 300. Section 1225(b) instead mandates Petitioner's detention as an arriving alien. Detention during those proceedings is "a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Petitioner responds that due process entitles him to an individualized bond hearing and bars re-detention absent a change in his flight risk or dangerousness. [Doc. No. 10 at 7–8]. But the Petition does not allege denial of any process the statute prescribes—it disputes the fact of his detention, not the procedures attending it. On these allegations, the Fifth Amendment requires no more. Grounds three and four are denied.

**C. Petitioner's Fourth Amendment and APA theories do not sound in habeas.**

Ground one—that Petitioner was arrested and detained without a warrant or probable cause—does not sound in habeas.[4] The Court need not decide whether probable cause supported the March 19, 2026 stop and arrest because release is not the remedy for that kind of violation. As the Tenth Circuit has explained, had a petitioner "shown [a Fourth Amendment] violation, he would be entitled to suppression of the evidence, . . . not . . . dismissal of the proceedings." *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011). And once removal proceedings have begun, they "must be allowed to proceed

[4] Even if habeas relief were available, the record shows a warrant was issued and served. [Doc. No. 9-6].

without the intervention of proceedings in the district court challenging the arrest." *Min-Shey Hung v. United States*, 617 F.2d 201, 202 (10th Cir. 1980). Petitioner's removal proceedings are underway. [Doc. No. 9-8]. Ground one is denied.

To the extent the Petition raises an APA claim, that claim fails as well. Where a claim "'necessarily impl[ies] the invalidity' of [the petitioner's] confinement," it "fall[s] within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). The APA confirms as much, foreclosing relief where there is an "adequate remedy in a court." 5 U.S.C. § 704. The APA is thus an alternative to habeas, not a ground for it. Because Petitioner brings his challenge in habeas, any APA claim is unnecessary and is denied.

## IV. CONCLUSION

For these reasons, the Court DENIES Petitioner's Petition for Writ of Habeas Corpus. [Doc. No. 1]. A separate judgment will follow.

IT IS SO ORDERED this 2nd day of June 2026.



JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE